```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION
```

KAYLA MADAK,

    Plaintiff,

v.                                    Case No. 8:18-cv-2665-T-33AEP

PASCO COUNTY SHERIFF
CHRIS NOCCO,

    Defendant.

_____/

## **ORDER**

This matter comes before the Court in consideration of Defendant Pasco County Sheriff Chris Nocco's Motion to Dismiss, for More Definite Statement, and for Conversion to Summary Judgment, filed on January 4, 2019. (Doc. # 26). Plaintiff Kayla Madak responded on January 30, 2019. (Doc. # 30). For the reasons that follow, the Motion is granted as set forth herein and Madak may file a second amended complaint by February 15, 2019.

## **I.   Background**

In 2015, Madak was a minor and freshman at Hudson High School in Pasco County, Florida. (Doc. # 23 at 5). On February 10, 2015, Hatfield — a Pasco County Deputy Sheriff — arrested Madak at her school "for carrying a pocket knife protected

under Florida law but which the school and Deputy Sheriff said was an illegal camouflaged tactical weapon." (Id. at 5).

According to the Amended Complaint, "[i]t was clear from day one . . . that the knife was a legal 3.5 inch pocket knife, and no probable cause existed to institute a criminal proceeding." (Id. at 10). Madak allegedly brought the pocket knife to school "to clean off excess mascara from her face which school authorities documented in their statements to law enforcement." (Id. at 11). The Amended Complaint alleges: "Had the Defendant Sheriff's Office examined [Madak's] knife available in evidence before arresting [her] as any reasonably objective police officer would have, it would not have warranted a reasonable man to believe that any criminal offense had been committed by [Madak]." (Id. at 6).

Madak alleges Deputy Sheriff Hatfield "should have reviewed Florida Knife Laws before arresting" her and that Sheriff Nocco had conducted "an incomplete criminal investigation," resulting in Madak being "arrested and prosecuted without probable cause for an illegal knife." (Id. at 3, 5). She also alleges Deputy Sheriff Hatfield "had received defective training from the Sheriff on Florida Knife Law." (Id. at 6). "The criminal arrest was accomplished by the Sheriff without probable cause to believe a crime was

2

committed, and was proximately caused partially by improper defective training of deputies on the knife laws of Florida." (Id. at 7). "The Sheriff's lack of training of staff properly resulted in a significant alteration or extinguishment of [Madak's] legal rights to be free of false arrest and prosecution." (Id. at 3).

Following the arrest, Sheriff Nocco "caused a prosecution to be instituted against [] Madak in the criminal Juvenile Court for Pasco County, Florida." (Id. at 10-11). The prosecution "was continued long after it was apparent no probable cause to prosecute existed." (Id. at 11). Eventually, the prosecution "was resolved in favor of [] Madak on May 13, 2015" when the State Attorney filed a No Information. (Id.). As a result of the arrest and prosecution, Madak suffered "emotional anguish, deprivation of her liberty, emotional and physical suffering, embarrassment, loss of education, and damage to her good reputation." (Id. at 12). Madak's father, Donald Madak, "incurred attorney's fees and court cost(s), in defeating [] said false charges, and in investigation and pursuit of this lawsuit, which right to reimbursement he assigns to her." (Id.).

Madak and her father initiated this action against Sheriff Nocco and Deputy Sheriff Hatfield in state court on

3

September 18, 2018, asserting a single count titled "False Arrest and Imprisonment and Malicious Prosecution of Kayla Madak Violating the 4th, 5th, and 14th Amendments to the U.S. Constitution and Florida Constitution." (Doc. ## 1, 7). Sheriff Nocco and Deputy Sheriff Hatfield removed the case to this Court on October 31, 2018, on the basis of federal question jurisdiction. (Doc. # 1). Sheriff Nocco and Deputy Sheriff Hatfield moved to dismiss (Doc. # 6), and the Court granted the motion with leave to amend on December 10, 2018, (Doc. # 22).

Madak filed her Amended Complaint on December 19, 2018, asserting Section 1983, false arrest, and malicious prosecution claims against Sheriff Nocco only. (Doc. # 23). Sheriff Nocco then filed the instant Motion (Doc. # 26), and Madak has responded. (Doc. # 30). The Motion is now ripe for review.

## II. Legal Standard

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of

4

Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "The scope of review must be limited to the four corners of the complaint" and attached exhibits. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

### III. **Analysis**

Sheriff Nocco seeks dismissal of both the Section 1983 claim and the state law claims. (Doc. # 26 at 3). Alternatively, Sheriff Nocco requests the Court convert the Motion to a motion for summary judgment and grant summary judgment on all claims. (Id. at 8-13).

As a preliminary matter, the Court declines to convert the Motion to Dismiss to a motion for summary judgment. Discovery has only just begun, and the Court finds it is not

appropriate to rule on summary judgment at this juncture. Indeed, Madak requests that the Court not convert the Motion to one for summary judgment because depositions of the relevant parties have not yet been taken. (Doc. # 30 at 3).

The Court will discuss the arguments for dismissal of the federal and state claims separately.

A.  **Section 1983 Claim**

Sheriff Nocco argues that Count I, for alleged violations of Madak's First, Fourth, Fifth, and Fourteenth Amendment rights, should be dismissed. (Doc. # 26 at 4-7). He correctly notes that it is unclear in what capacity he is being sued because the Amended Complaint does not state whether the Section 1983 claim is brought against Sheriff Nocco in his official or individual capacity. (Id. at 4).

When it is unclear in what capacity a defendant is being sued, courts apply the "course of proceedings" test. See Jackson v. Ga. Dep't of Trans., 16 F.3d 1573, 1575 (11th Cir. 1994)("When it is not clear in which capacity the defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be imposed."). "In looking at the course of proceedings, courts consider such factors as the nature of [the] plaintiff's claims, requests for compensatory or punitive damages, and the nature of any

defenses raised in response to the complaint, particularly claims of qualified immunity which serve as an indicator that the defendant had actual knowledge of the potential for individual liability." Young Apartments, Inc. v. Town of Jupiter, 529 F.3d 1027, 1047 (11th Cir. 2008).

Madak's accusations regarding Sheriff Nocco's alleged failure to train on Florida knife law appear to be brought against Sheriff Nocco in his official capacity. Indeed, failure to train claims are brought against local governments under Monell. See Connick v. Thompson, 563 U.S. 51, 61 (2011)("In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.").

On the other hand, Madak's accusations that she was arrested without probable cause because of an incomplete investigation appear to be brought against Sheriff Nocco in his individual capacity, as these claims are typically brought against officers in their individual capacities. See Kingsland v. City of Miami, 382 F.3d 1220, 1228-30 (11th Cir. 2004)(addressing failure to investigate claims against officers in their individual capacities and explaining that a constitutionally reasonable investigation requires the

officer to consider "all the information reasonably discoverable").

The Court agrees with Sheriff Nocco that Count I is due to be dismissed under either the failure to train or failure to investigate theories for failure to state a claim. Regarding the failure to train theory, Madak merely alleges in conclusory fashion that she was arrested because of Deputy Sheriff "Hatfield's poor training on Florida knife law" and that Sheriff Nocco's "lack of training of staff properly resulted in a significant alteration or extinguishment of [Madak's] legal rights to be free of false arrest and prosecution." (Doc. # 23 at 3).

It is well-established that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997). Rather, to recover damages from Sheriff Nocco under Section 1983, Madak must show: "(1) that [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004)(citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

A plaintiff seeking to impose liability on a municipality under Section 1983 must identify a particular municipal "policy" or "custom" that caused the constitutional injury. Bd. of Cty. Comm'rs of Bryan Cty., 520 U.S. at 403.

> A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . A custom is a practice that is so settled and permanent that it takes on the force of law.

Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999)(quoting Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997)). Madak must show that Sheriff Nocco's policy or custom was the "moving force" that caused the constitutional violation in order to establish Sheriff Nocco's Section 1983 liability under the failure to train theory. McElligott v. Foley, 182 F.3d 1248, 1259 (11th Cir. 1999); Young v. City of Augusta, 59 F.3d 1160, 1171 (11th Cir. 1995).

An inadequate training program can be the basis for Section 1983 liability in limited circumstances where the municipality adhered to an approach that failed to prevent tortious conduct by employees. Bd. of Cty. Comm'rs of Bryan Cty., 520 U.S. at 407 (citing City of Canton, 489 U.S. at 387-390). "A pattern of tortious conduct by employees can show that the lack of proper training constituted the 'moving

9

force' behind the plaintiff's alleged injury." Miller v. City of Tampa, No. 8:10-cv-487-T-33EAJ, 2011 WL 2631974, at *2 (M.D. Fla. July 5, 2011)(citing Bd. of Cty. Comm'rs of Bryan Cty., 520 U.S. at 407–408; Lewis v. City of W. Palm Beach, 561 F.3d 1288 (11th Cir. 2009)).

"[A] municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Connick, 563 U.S. at 61 (citation and internal quotation marks omitted). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of Cty. Comm'rs of Bryan Cty., 520 U.S. at 410.

Here, Madak has not alleged other incidents caused by poor training. See Connick, 563 U.S. at 62 ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."). Nor has she otherwise established that Sheriff Nocco showed deliberate indifference to poor training. Madak has not even alleged with any detail how Sheriff Nocco's training on Florida knife law was insufficient. Therefore, Madak has not pled a basis for

municipal liability for her failure to train claim against Sheriff Nocco in his official capacity.

Concerning the failure to investigate theory, Sheriff Nocco correctly notes the allegations are conclusory. (Doc. # 26 at 5). Count I merely alleges the following: "With an incomplete criminal investigation, the Sheriff arrested [] Madak for carrying an illegal knife on school property" and that Madak was "arrested and prosecuted without probable cause for an illegal knife." (Doc. # 23 at 3). Madak fails to allege how the investigation was incomplete besides vaguely asserting within her later false arrest claim that Deputy Sheriff Hatfield and Sheriff Nocco should have credited Madak's statement to Deputy Sheriff Hatfield and to school officials that she used the knife to remove excess mascara. (Id. at 6). But the fact that Madak used the knife to remove mascara does not mean that the knife was legal under Florida knife law. And Madak does not clearly allege what other actions Sheriff Nocco should have taken in the investigation before Madak's arrest.

Madak also fails to state a claim against Sheriff Nocco individually under this theory because there is no allegation that Sheriff Nocco personally participated in Madak's arrest. (Doc. # 26 at 6). Even assuming Madak was trying to bring

11

this claim against Sheriff Nocco in his official capacity, Sheriff Nocco cannot be held liable under the doctrine of respondeat superior. See Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1328 (11th Cir. 2015)("Although the Supreme Court has held that local government may be subject to liability under § 1983, a plaintiff cannot rely upon the doctrine of respondeat superior to hold the government liable."). If Madak wishes to bring this failure to investigate claim against Sheriff Nocco in his official capacity, she should make sure to satisfy the pleading requirements for Monell claims, as discussed above, when she amends her Amended Complaint.

Because Madak has failed to state a Section 1983 claim under either the failure to train theory or the failure to investigate theory, Count I is dismissed. The Court grants Madak another — and likely final — opportunity to amend her Section 1983 claim. For the sake of clarity, Madak should explicitly note the capacity in which Sheriff Nocco is being sued.

### B. State Law Claims

Sheriff Nocco argues that both the false arrest (Count II) and malicious prosecution (Count III) claims, which are

brought against him in his official capacity, should be dismissed. (Doc. # 26 at 13-15).

### 1. **False Arrest**

Count II is titled "False Arrest and Imprisonment of Kayla Madak Violating the Florida Constitution," but the prayer for relief for that count requests only an entry of judgment for "false arrest." (Doc. # 23 at 6-7). So, there is some ambiguity as to whether Madak is attempting to assert a claim for violation of sections of the Florida Constitution or whether she is asserting a common law claim for false arrest.

Still, the Court notes that the introduction to Count II states it is "based upon common law of the State of Florida . . . for false arrest." (Id. at 1). Additionally, the nature of the allegations is consistent with a common law claim for false arrest. Thus, it appears to the Court that Madak merely intended to bring a common law claim for false arrest and the reference to the Florida Constitution in the title is superfluous.

Nevertheless, to the extent Count II does intend to bring a claim for violation of provisions of the Florida Constitution, Sheriff Nocco argues the claim should be dismissed. (Doc. # 26 at 13-14). Sheriff Nocco correctly

points out that Madak only seeks monetary relief for Count II, in the form of "compensatory damage(s) for loss of reputation, pain and suffering, emotional anguish, loss of education, medical and psychological expenses, harm to her employment options and investigative cost(s) and court cost(s) of this action." (Doc. # 23 at 7-8).

But, as Sheriff Nocco put it, "there is abundant authority that a cause of action for monetary damages does not arise simply because a state agency has violated a right secured by the Florida Constitution." (Doc. # 26 at 13); see Bradsheer v. Fla. Dep't of Highway Safety & Motor Vehicles, 20 So. 3d 915, 921 (Fla. 1st DCA 2009)("[A] cause of action for monetary damages does not arise simply because a state agency has violated a constitutional right."); Garcia v. Reyes, 697 So. 2d 549 (Fla. 4th DCA 1997)(holding that no cause of action exists for money damages for violation of state constitutional right). Therefore, to the extent Madak sought to bring a claim for monetary damages for an alleged violation of the Florida Constitution, Count II is dismissed with prejudice.

Sheriff Nocco does not argue Count II should be dismissed to the extent it asserts a common law false arrest claim.

Thus, Count II survives to the extent it asserts a common law false arrest claim.

### 2. **Malicious Prosecution**

Count III is titled "Malicious Prosecution of Kayla Madak Violating the Florida Constitution" and is brought against Sheriff Nocco in his official capacity. (Doc. # 23 at 8, 10). Although the title of Count III mentions the Florida Constitution, the request for relief merely requests entry of judgment "for malicious prosecution" and the introduction section for this count states the claim is "based upon [the] common law of the State of Florida." (Id. at 8, 12). Therefore, as with the false arrest claim, the Court construes Count III as merely asserting a common law malicious prosecution claim.

Sheriff Nocco argues that this claim should be dismissed because a malicious prosecution claim cannot be brought against the Sheriff in his official capacity. (Doc. # 26 at 14).

Indeed, Section 768.28(9)(a), Florida Statutes, provides in relevant part:

> The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or

15

> in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). And Florida law is clear that to establish a claim for malicious prosecution, there must be a showing of malice. See Miami-Dade County v. Asad, 78 So. 3d 660, 664 (Fla. 3d DCA 2012)("Malice is a fact to be proven by the plaintiff as it is a necessary ingredient of the charge of malicious prosecution and it is not synonymous with want of probable cause." (citation and internal quotation marks omitted)).

Because a malicious prosecution claim requires a showing of malice on the part of the individual officer, Madak cannot maintain a claim for malicious prosecution against a state agency or subdivision of the state, such as Sheriff Nocco in his official capacity. See Weiland, 792 F.3d at 1330 (affirming dismissal of malicious prosecution claim against defendant Sheriff's Office because the claim "was barred by sovereign immunity"); Johnson v. State Dep't of Health & Rehab. Servs., 695 So. 2d 927, 930 (Fla. 2d DCA 1997)("Section 768.28(9)(a) bars an action for malicious prosecution against the state or its subdivisions arising from the malicious acts of their employees."). Therefore, the malicious prosecution

claim against Sheriff Nocco in his official capacity is dismissed with prejudice.

### 3. **Notice to the Florida Department of Financial Services**

"Pursuant to Fla. Stat. § 768.28, to benefit from [Florida's waiver of sovereign immunity for tort claims], a claimant must provide written notice of any claim before filing suit." Doe v. G-Star Sch. of the Arts, Inc., No. 16-CV-80446, 2016 WL 4625625, at *4 (S.D. Fla. Sept. 6, 2016). Section 768.28(6)(a) states in relevant part:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, **except as to any claim against a municipality, county, or the Florida Space Authority,** presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing . . . .

Fla. Stat. § 768.28(6)(a)(emphasis added). Furthermore, these statutorily-required notices are "conditions precedent to maintaining an action." Fla. Stat. § 768.28(6)(b). Strict compliance with Section 768.28(6) is required. Rumler v. Dep't of Corrs., 546 F. Supp. 2d 1334, 1344 (M.D. Fla. 2008).

Additionally, Section 768.28(7) states that "process shall be served upon the head of the agency concerned and also, except as to a defendant municipality, county, or the

Florida Space Authority, upon the Department of Financial Services." Fla. Stat. § 768.28(7).

In the Amended Complaint, Madak alleges that "[a]ll statutory notices of an intent to sue the Sheriff and school board were timely filed under Florida Statute 769.28." (Doc. # 23 at 7). Additionally, Madak attaches a composite exhibit to show that the necessary statutory notices were served. (Id. at 15). That exhibit is a letter of intent to sue sent by Madak's counsel addressed to the Chairman of the Pasco County School Board and to Sheriff Nocco. (Id.).

Sheriff Nocco argues that the notice by Madak is insufficient. (Doc. # 26 at 15-16). Specifically, the exhibit does not show that the Department of Financial Services was also served with notice. So, Sheriff Nocco argues that the Amended Complaint's general allegation that all required notices were issued is disproven by the attached exhibit's failure to support that the Department of Financial Services received the notice. (Id. at 16).

The Court disagrees. As Sheriff Nocco acknowledges in his Motion, the Department of Financial Services maintains that notices of intent to sue Sheriffs are not required under the current versions of Sections 768.28(6)(a) and 768.28(7). (Doc. # 26 at 15 n.11). This is because the Department reads

the word "county" in those sections to include Sheriffs. (Id.). The Court agrees with the Department's reading of Sections 768.28(6)(a) and 768.28(7).

Furthermore, while Madak was arrested in 2015, she mailed her letter notifying Sheriff Nocco of her intent to sue in 2018 and initiated this action in 2018. Section 768.28 was amended in 2017 to add the word "county." Thus, the current version of Section 768.28 was in force when Madak sent her notice of intent to sue and initiated this action. Therefore, the Court concludes that Madak was not required to give notice of her intent to sue to the Department of Financial Services and will not dismiss the state law claims on this ground.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Pasco County Sheriff Chris Nocco's Motion to Dismiss, for More Definite Statement, and for Conversion to Summary Judgment (Doc. # 26) is **GRANTED** as set forth herein.

(2) Count I is dismissed without prejudice and with leave to amend by February 15, 2019. If Madak fails to file a second amended complaint by February 15, 2019, the case will proceed only as to Count II.

(3) Count II is dismissed with prejudice to the extent it can be construed to assert a claim under the Florida Constitution. Count II survives to the extent it asserts a common law false arrest claim.

(4) Count III, the malicious prosecution claim, is dismissed with prejudice.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>1st</u> day of February, 2019.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE